UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA KARDOS,

       Plaintiff,                                Hon. Robert Holmes Bell

v.                                                     Case No. 1:11-CV-964

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 23 years of age on her alleged disability onset date and 25 years of age on the date of the ALJ's decision. (Tr. 21, 128). Plaintiff completed the eleventh grade and worked previously as a fast food worker. (Tr. 21, 73-74, 161-63).

Plaintiff applied for benefits on February 9, 2010, alleging that she had been disabled since April 2, 2009, due to back pain and "mental health." (Tr. 128-38, 171). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 78-127). On March 17, 2011, Plaintiff appeared before ALJ Kathleen Eiler, with testimony being offered by Plaintiff, Plaintiff's boyfriend, and vocational expert, David Holwerda. (Tr. 55-77). In a written decision dated April 7, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 12-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2009. (Tr. 14, 158); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

# RELEVANT MEDICAL HISTORY

On March 10, 2008, Plaintiff participated in a psychological evaluation performed by James Findley, Ph.D. (Tr. 251-54). Plaintiff reported that she was disabled "due to depression and anxiety." (Tr. 251). Plaintiff reported that she began experiencing depression after the birth of the first of her two children because she was "not ready to be a mom." (Tr. 251). Plaintiff reported that "her only work experience was a five-month stint at a fast food restaurant" which she "quit...because she could not stand to be around other people and did not get along with her supervisor." (Tr. 252). Plaintiff also reported that she "had previously applied for disability benefits two years earlier and expressed resentment about being denied." (Tr. 253). Plaintiff appeared "depressed and angry," but the results of a mental status examination were otherwise unremarkable. (Tr. 253-54). Dr. Findley also noted that while Plaintiff "reported frequent panic anxiety attacks, particularly in social situations, she did not display any obvious symptoms of anxiety during the interview." (Tr. 254). Plaintiff was diagnosed with: (1) social phobia, generalized, with panic attacks; and (2) mood disorder, not otherwise specified. (Tr. 254). Plaintiff GAF score was rated as 50.[1] (Tr. 254).

X-rays of Plaintiff's lumbar spine, taken on May 21, 2009, revealed the following:

> The vertebrae have normal alignment. Posterior elements are intact. Disc spaces are normal. Sacroiliac joints are normal. There is no evidence of a fracture. Negative lumbar spine exam. I see no change compared to 3-7-08 exam.

(Tr. 276).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

On May 29, 2009, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed "a broad-based disc protrusion at the L4-5 level causing moderate central spinal canal narrowing and mass effect upon the traversing bilateral L5 nerves, particularly on the right." (Tr. 274-75). On July 27, 2009, Plaintiff participated in an electromyogram examination the results of which were "markedly abnormal...consistent with a severe right L5 radiculopathy." (Tr. 269).

Treatment notes dated September 4, 2009, indicate that Plaintiff was diagnosed by Dr. J. Eric Zimmerman as suffering from a "right L4-5 herniated disc" for which Plaintiff agreed to undergo lumbar microdiscectomy surgery. (Tr. 267). On October 16, 2009, Dr. Zimmerman indicated that he was discontinuing his treatment of Plaintiff because she "has failed to show up for her last two office appointments including her scheduled surgery." (Tr. 257).

On February 9, 2010, Plaintiff met with a Social Security official to discuss her application for benefits. (Tr. 157-60). The official noted that while Plaintiff "walked stiffly" and moved "gingerly" during their meeting, once Plaintiff was "out of the building" her "gait increased in speed." (Tr. 159).

On February 16, 2010, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed a "moderate-sized disc herniation to the right of midline at L4-5 encroaching on the right L5 nerve root" and a "small disc herniation" at L5-S1 which was "mildly encroaching on the left S1 nerve root." (Tr. 322-23).

On April 21, 2010, Plaintiff underwent back surgery performed by Dr. Thomas Schermerhorn. (Tr. 358-59). Specifically, the doctor performed a right L4-5 microdiscectomy and an L5 foraminotomy. (Tr. 358-59). On May 21, 2010, Plaintiff was examined by Dr. Schermerhorn.

(Tr. 361). Plaintiff reported that she was continuing to experience "persistent back pain," but had experienced "complete relief of her radiating leg pain." (Tr. 361). Plaintiff also reported "improved strength" and "decreased paresthesias." (Tr. 361). The results of a physical examination were unremarkable and the doctor recommended to Plaintiff that she participate in physical therapy "directed at lumbar core stabilization." (Tr. 361). X-rays of Plaintiff's lumbar spine taken on June 17, 2010, revealed "light levoscoliosis and minimal narrowing of the L4-5 disc," but "no evidence of abnormal motion." (Tr. 374).

On July 7, 2010, Plaintiff was examined by Vincent Cornellier, Ph.D., with the Munson Medical Center Pain Clinic (Tr. 427-28). Plaintiff reported that she was "depressed and anxious." (Tr. 427). Plaintiff also reported that she "drinks significant amounts of alcohol" and "smok[es] marijuana on a regular basis." (Tr. 428). The doctor observed that Plaintiff "has the symptoms of bipolar depression" and "will be seeing a psychiatrist within a week." (Tr. 428). The doctor further observed that Plaintiff's "risk for non-compliance relative to opiate medications is somewhat high." (Tr. 428). The doctor further observed that "it appears that this 24 year old is already overmedicating with substances in addition to her pain medication, with very little knowledge of the potential harm." (Tr. 428).

On July 13, 2010, Plaintiff was examined by Dr. Schermerhorn. (Tr. 433-34). Plaintiff reported that her leg pain was "gone," but that she continued to experience "persistent difficulty with back pain." (Tr. 433). X-rays of Plaintiff's lumbar spine revealed "no evidence of instability or hypermobility." (Tr. 433). The doctor noted that Plaintiff "did not initiate physical therapy as directed." (Tr. 433). Dr. Schermerhorn reiterated to Plaintiff the importance of participating in physical therapy and also "encouraged [Plaintiff] to increase her activities and

6

responsibilities in the home." (Tr. 433). The doctor concluded that Plaintiff "seems to have progressed remarkably well." (Tr. 433).

On July 21, 2010, Plaintiff was examined by Dr. Kamala Wright at the Munson Medical Center Pain Clinic. (Tr. 424-25). Plaintiff reported that she was experiencing back pain. (Tr. 424). The doctor observed that Plaintiff "stands with an exaggerated lumbar lordosis." (Tr. 425). Straight leg raising was negative bilaterally and an examination of Plaintiff's lower extremities revealed "intact" sensation. (Tr. 425). The doctor told Plaintiff that "physical therapy will give her the most benefit" and, moreover, that "continuing narcotic therapy" would not be appropriate at which point Plaintiff "became quite angry." The doctor concluded that Plaintiff was not a good candidate for continuing narcotic therapy because "she would be at high risk for narcotic misuse." (Tr. 425).

Treatment notes dated July 26, 2010, indicate that Plaintiff's continuing back pain was "likely musculoskeletal in nature." (Tr. 400). On October 8, 2010, Plaintiff participated in an electrodiagnostic examination of her lower extremities the results of which were "normal." (Tr. 416-17).

On November 5, 2010, Plaintiff began treatment with Dr. David Sprague, a psychiatrist with Northern Lakes Community Mental Health. (Tr. 492-93). Plaintiff reported experiencing mood swings and racing thoughts. (Tr. 493). The results of a mental status examination were unremarkable. (Tr. 493). Plaintiff was diagnosed with bipolar disorder, post

traumatic stress disorder, and panic disorder with agoraphobia. (Tr. 493). Plaintiff's GAF score was rated as 60.[2] (Tr. 493). Dr. Sprague prescribed Prozac for Plaintiff. (Tr. 493).

On December 3, 2010, Plaintiff was examined by Dr. Tolga Kurt. (Tr. 483-84). Plaintiff reported experiencing chronic low back pain. (Tr. 483). Straight leg raising was negative and Plaintiff exhibited "normal" reflexes and muscle strength. (Tr. 483). The doctor recommended that Plaintiff participate in physical therapy. (Tr. 484).

On December 29, 2010, Plaintiff was examined by Dr. Sprague. (Tr. 490). Plaintiff reported that her panic attacks have been eliminated, but that she still experiences mood swings. (Tr. 490). The results of a mental status examination were unremarkable and the doctor reported that Plaintiff appeared "only mildly dysthymic at this time." (Tr. 490). Plaintiff's medication regimen was modified to address her continued mood swings. (Tr. 490). On January 26, 2011, Plaintiff was examined by Dr. Sprague. (Tr. 500). Plaintiff reported that her mood swings had "decrease[d]" and that her anxiety and panic attacks "are both diminished." (Tr. 500).

X-rays of Plaintiff's lumbar spine, taken on February 3, 2011, revealed "trace scoliosis and trace degenerative changes at L4-5, otherwise unremarkable." (Tr. 506). On February 25, 2011, Plaintiff was examined by Dr. James Whelan. (Tr. 501-03). Plaintiff reported that she was experiencing back pain. (Tr. 501). An examination of Plaintiff's lumbosacral spine revealed "no swelling, edema or erythema of surrounding tissue, [and] no paraspinous muscle spasm." (Tr. 502). Plaintiff exhibited "normal" muscle strength and Romberg testing[3] was negative. (Tr. 502).

---

[2] A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

[3] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on February 14, 2013). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[4]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease status post laminectomy; (2) bipolar disorder; and (3) panic disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14-16).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) she must have the option to sit or stand every 30 minutes; (2) she can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps/stairs; (3) she can never climb ladders, ropes, or scaffolds; (4) she can perform simple, routine, and repetitive tasks; (5) she can occasionally interact with supervisors, co-workers, and the general public; and (6) she would work best in a small, familiar group. (Tr. 16).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant

can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert David Holwerda.

The vocational expert testified that there existed approximately 4,400 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 73-75). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to benefits.

a. The ALJ's RFC determination is Supported by Substantial Evidence

Plaintiff asserts that the ALJ's RFC determination is deficient because the ALJ "provided no analysis or evaluation for how this evidence actually supported the residual functional capacity." Specifically, Plaintiff argues that the ALJ, by failing to assess her abilities on a function-by-function basis, fell short of the "evaluation standards of [Social Security Ruling] 96-8P."

As Plaintiff correctly notes, Social Security Ruling 96-8p provides that in determining a claimant's RFC, the ALJ must "assess [the claimant's] work-related abilities on a function-by-function basis." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *1 (S.S.R., July 2, 1996). As the Sixth Circuit has recognized, however, while a "function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th

11

Cir., Mar. 4, 2002) (citation omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* (citation omitted).

The ALJ discussed at length the evidence of record and how such supported her RFC determination. The ALJ's RFC determination is supported by substantial evidence as the discussion of the medical record above indicates. Plaintiff's back surgery successfully resolved her most severe symptoms. The objective medical evidence obtained subsequent to Plaintiff's surgery revealed minimal findings all of which are consistent with the ALJ's RFC determination. Plaintiff's emotional impairments likewise responded to treatment. Simply put, the medical record reveals that while Plaintiff may experience a certain degree of limitation in her ability to work, such limitations are more than accounted for by the ALJ's RFC finding. In sum, the ALJ's RFC determination is supported by substantial evidence. Accordingly, this argument is rejected.

b. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff also asserts that the ALJ's finding at Step V of the sequential process is infirm because such was premised upon the response by the vocational expert to an inaccurate hypothetical question. Specifically, Plaintiff alleges that the hypothetical question which the ALJ posed to the vocational expert failed to sufficiently account for her limitations with respect to concentration, persistence, and pace. While the ALJ may satisfy her burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray

Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

As Plaintiff correctly notes, the ALJ did specifically find that Plaintiff experiences "moderate difficulties. . .[w]ith regard to concentration, persistence or pace." (Tr. 15). Plaintiff argues that because the ALJ's hypothetical question to the vocational expert failed to include specific limitations related to these characteristics, the ALJ improperly relied upon the response thereto. In support of this argument, Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010). This particular case, however, is easily distinguishable and does not support Plaintiff's position.

Jimmy Ealy's application for disability benefits was denied by the Social Security Administration following a hearing before an Administrative Law Judge. *Id.* at 506. The medical record before the ALJ contained the conclusion by Dr. Scher that Plaintiff was limited to the performance of "simple repetitive tasks" in "[two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516. The ALJ expressly adopted this limitation. *Id.* The ALJ also found that Ealy "has moderate difficulties" with regard to concentration, persistence, or pace. *Id.* at 510. Despite expressly adopting the limitation articulated by Dr. Scher, the hypothetical question which the ALJ posed to the vocational expert stated, in relevant part, "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* at 516.

The Sixth Circuit found that the ALJ's reliance on the response to this particular question was improper because the ALJ, having expressly adopted the limitation articulated by Dr. Scher, "should have included [in his hypothetical question] the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be

13

critical to his job." *Id.* As the Sixth Circuit concluded, because "Ealy's limitations were not fully conveyed to the vocational expert," the ALJ's reliance on the vocational expert's testimony could not constitute substantial evidence. *Id.* at 516-17.

Contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that an ALJ's hypothetical question must contain specific limitations regarding concentration, persistence, or pace whenever the ALJ finds limitations in such areas. *See, e.g., Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio, Feb. 1, 2013) (distinguishing *Ealy* and limiting it to its facts); *Steed v. Astrue*, 2012 WL 1097003 at *9 (N.D. Ohio, Mar. 20, 2012) (same); *Alonso v. Commissioner of Social Security*, 2011 WL 4526676 at *11 (W.D. Mich., Aug. 8, 2011) (same); *McGaha v. Astrue*, 2012 WL 762176 at *5 (E.D. Ky., Mar. 7, 2012) (same). Rather, *Ealy* simply reiterates the long-held notion that if the ALJ relies on the response to a hypothetical question, such question must accurately portray the claimant's limitations and be consistent with the ALJ's express findings. *See, e.g., Clayton*, 2013 WL 427407 at *7; *Steed*, 2012 WL 1097003 at *9; *Alonso*, 2011 WL 4526676 at *11; *McGaha*, 2012 WL 762176 at *5.

In *Ealy*, the ALJ expressly adopted a specific limitation which he then failed to include in his hypothetical to the vocational expert. Here, no such shortcoming or inconsistency exists. The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 4,400 such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical question the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: March 4, 2013  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge